

# NUMBER 13-22-00516-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE ECONOMIC DEVELOPMENT CORPORATION OF WESLACO, INC.

### On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Silva
Memorandum Opinion by Chief Justice Contreras[1]**

Relator Economic Development Corporation of Weslaco, Inc., filed a petition for writ of mandamus contending that the trial court[2] abused its discretion by: (1) denying relator's motion to compel discovery responses and relator's motion to compel the

---

[1] *See* Tex. R. App. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number C-0295-20-L in the 464th District Court of Hidalgo County, Texas, and the respondent is the Honorable Joe Ramirez. *See id.* R. 52.2.

production of a privilege log; and (2) granting a stay of discovery or, alternatively, denying relator's motion to lift the discovery stay in part. We conditionally grant the petition for writ of mandamus as stated herein.

## I. BACKGROUND

The underlying suit involves the alleged breach of a financial incentive contract between relator and Nolana Self-Storage, LLC (Nolana). According to the allegations in the record, relator is a non-profit corporation which derives income from sales tax revenues within the City of Weslaco, Texas. Relator sought to encourage and expand local economic activity and employment by encouraging commercial improvements. Relator thus entered into a contract with Nolana to develop a hotel in Weslaco. Relator ultimately filed suit against Nolana and Sunil Wadhwani, Gerardo Tafolla, Leo Lopez, Harjinder Singh, and Ricardo Quintanilla, individuals associated with Nolana, for causes of action including breach of the financial incentive contract, negligence, breach of fiduciary duty, fraud, and conspiracy. According to relator, some of these individual defendants have been indicted in federal criminal prosecutions based on some of the events underlying this lawsuit. Relator alleges that Wadhwani and Tafolla have pleaded guilty and await sentencing while Quintanilla awaits trial. According to relator, Wadhwani is Nolana's "equity owner" and sole member.

On March 23, 2020, relator propounded its "First Request for Production and Inspection" to Nolana. Nolana objected to the majority of relator's requests for production by asserting: "Based on the advice of counsel, and the Fifth and Fourteenth Amendments to the U.S. Constitution and the analogous safeguards of the Texas Constitution, I

2

respectfully decline to respond further to this request for production on the grounds that a response may tend to incriminate me."

On June 9, 2020, relator requested that Nolana produce a privilege log identifying the information and materials which it was withholding in reliance on its invocation of the Fifth Amendment, and to provide the documents which relator had requested in the requests for production. *See* TEX. R. CIV. P. 193.3(b) (governing the procedure regarding a privilege log).

On June 23, 2020, relator filed a "First Motion to Compel Discovery by [Nolana]." Relator requested the trial court to require Nolana to respond to relator's pending discovery requests, urged that the discovery that it sought was relevant and not objectionable, and argued that Nolana's invocation of the Fifth Amendment privilege against self-incrimination was "entirely baseless."

On June 30, 2020, Nolana refused relator's requests for the production of a privilege log and for the production of documents. According to Nolana, "Wadhwani invokes his Fifth Amendment privilege to be free from self-incrimination with respect to all of the documents and material[s] that were in the possession of the Grand Jury" and "that formed the basis for the Indictment" in the criminal case against him. Nolana asserted that "[t]he volume of the documents acquired by the Grand Jury for the Indictment precludes a more precise description of the material." Nolana further asserted that the allegations of the criminal indictment "mirror" the allegations in the civil case:

> Stated otherwise, the matters and things requested involve the circumstances and subject matter of the pending Indictment and any admission or disclosure will implicate [Wadhwani's] rights under the Fifth Amendment. Because the documents and materials that were the subject

3

of your First Motion for Production likely constitute the basis for the pending Indictment, [Wadhwani] would oppose production and ask the court to stay discovery until the Indictment is dismissed and the criminal litigation resolved.

> [Wadhwani] invokes the Fifth Amendment privilege in good faith. [Wadhwani] has entered a guilty plea under the provisions of a plea agreement to a charge distinct from that alleged in the Indictment. Notwithstanding that plea, the Indictment remains pending until [Wadhwani] fulfils his part of the agreement, the federal judge imposes the sentence, the government moves for dismissal of the Original Indictment, and the judge actually dismisses the Indictment. In *Mitchell v. United States*, 526 U.S. 314, 324 (1999), the Supreme Court held that a guilty plea does not prevent a defendant from relying on the privilege at sentencing. Here, [Wadhwani] may in good faith invoke his Fifth Amendment [P]rivilege against self-incrimination and does so.

On July 6, 2020, Wadhwani filed a "Motion to Stay Discovery" pending the resolution of *United States v. Sunil Wadhwani*, case no. 7:19-CR-1995-2, in the United States District Court for the Southern District of Texas. Wadhwani alleged that a stay was warranted to avoid prejudice and to preserve his right to be free from self-incrimination.

On October 6, 2020, the Honorable Ysmael Fonseca, former presiding judge of the 464th District Court of Hidalgo County, Texas, held a pretrial hearing regarding relator's motions to compel discovery and Wadhwani's motion to stay discovery. The trial court first considered Wadhwani's motion to stay. Wadhwani's counsel asserted that Wadhwani had entered a guilty plea in federal proceedings as to one count of the charges filed against him, Tafolla had entered a guilty plea in a separate federal case involving different facts, and Quintanilla's federal criminal case was still pending. Wadhwani asserted that the civil and criminal cases "directly and entirely overlap," that there are "troubling issues on the interplay" between civil discovery and the criminal case, that relator would not be prejudiced by the delay of the civil case because damages would be

4

ultimately available through the civil process, and that the burden on the real parties would be "severe" if discovery were to proceed. Wadhwani ultimately argued that:

> The—the fair way to resolve this and in the interest of justice and fair administration and the public interest is to keep the lines between the federal criminal proceedings and the state civil proceedings separate. Granting a stay at the end of the day will limit I believe the collateral litigation that's going to arise out of this—out of this situation were this Court to proceed to permit discovery in this case. And we think that would be the better part of valor, with all due respect at this time.

In response, relator's counsel asserted that Nolana, as a corporation, had no Fifth Amendment privilege. Relator's counsel further explained that Wadhwani is the sole member of Nolana, Wadhwani had pleaded guilty in the pending federal criminal case, and the documents sought in discovery had already been produced in the federal criminal proceedings. Relator further contended that a blanket stay was impermissible and requested the trial court to review the challenged production.

In response, the real parties offered to entertain "narrowly tailored" requests for production and to consider a Rule 11 agreement regarding the production of discovery. *See* TEX. R. CIV. P. 11 (governing the enforceability of agreements "touching any suit pending" in litigation). That same day, the trial court signed an order granting Wadhwani's motion to stay discovery.

On October 28, 2020, relator filed a motion for rehearing, clarification, and reconsideration of the trial court's order granting the motion to stay discovery and for a ruling on its motion to compel discovery from Nolana and also filed a "Rule 193.3 Motion to Compel [Nolana] to Provide [a] Schedule of Withheld Documents."

5

On November 19, 2020, the trial court held a hearing on relator's motion for rehearing and motion to compel. Relator requested the trial court to allow discovery, given the challenges inherent in litigation when time passes, and witnesses move or become unavailable. In response, the trial court referenced the difficulties caused by the COVID-19 pandemic, mentioned that there were two hundred and fifty criminal law cases in its court alone that were waiting to be tried, and stated that all jury trials in the county had been postponed until April. The trial court took judicial notice of all records that had been filed, including those admitted at prior hearings, and refused to lift the stay or grant relator's motion to compel.

On November 20, 2020, the trial court issued an order (1) stating that the prior order "has been clarified on the record" and thus granted, (2) denying reconsideration of the stay order "without prejudice for partial lifting of the stay upon written motion," and (3) deferring ruling on relator's motion to compel production until the stay was lifted.

On January 1, 2021, the respondent began serving as the presiding judge of the 464th District Court, replacing Judge Fonseca. Subsequently, on June 8, 2021, the trial court held a hearing on relator's motion to compel Nolana to produce a privilege log under Rule 193.3 and took the matter under consideration. *See id.* R. 193.3. On June 22, 2021, the trial court signed an "Order Denying [Relator's] Rule 193.3 Motion to Compel [Nolana] to Provide [a] Schedule of Withheld Documents."

On or about January 12, 2022, relator propounded a "Second Request for Production and Inspection" to Nolana, and on February 17, 2022, relator again requested Nolana to provide a privilege log under Rule 193.3(b) and to produce the documents

6

requested in relator's first requests for production. Relator asserted:

> I think we differ regarding Judge Fonseca's consideration and order of Plaintiff's Motion for Clarification and Reconsideration of the Court's Order Granting Defendant Wadhwani's Motion to Stay Discovery. At the hearing, the Court noted that some discovery could continue. The Court's order also noted that it would consider our motion for partial lifting of the stay. In any case, my sense is that under the rules, [Nolana] has no discretion but to file the discovery log in response to the Plaintiff's Second Request for Production.

On March 18, 2022, relator filed a "Second Rule 193.3 Motion to Compel Nolana's Production of Privilege Log in Connection with [Relator's] Second Request for Production," and on March 21, 2022, relator filed a "Motion Requesting Partial Lifting of the Stay of Discovery."

On August 16, 2022, the trial court held a hearing on relator's motion for partial lifting of the discovery stay. According to counsel, the criminal federal case was still pending and was set for trial in October. Relator asserted that the real parties had tendered no evidence in support of the Fifth Amendment stay of discovery. Relator contended that one of the defendants in the case had passed away and another had suffered a heart attack. The trial court admitted into evidence, *inter alia*: Nolana's responses and objections to relator's first set of requests for production; an unsigned draft order granting relator's motion to partially lift the stay; a transcript from the federal court re-arraignment dated May 22, 2020, in which the federal court admonished Wadhwani that if he continued to plead guilty he would give up his right not to testify and not to incriminate himself; a letter dated June 30, 2020 from Wadhwani's counsel asserting the fifth amendment privilege; and the obituary of Leonel "Leo" J. Lopez Jr. On August 29, 2022, the trial court signed an order denying relator's motion requesting a partial lifting of

7

the discovery stay.

This original proceeding ensued. This Court requested and received a response to the petition for writ of mandamus from the real parties in interest, Wadhwani, Nolana, Singh, Tafolla, and Quintanilla. *See* TEX. R. APP. P. 52.2, 52.4, 52.8. Relator has further filed a reply in support of its request for relief by writ of mandamus.

## II.    STANDARD OF REVIEW

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that (1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "The relator bears the burden of proving these two requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 840.

## III.    DELAY

The real parties argue that mandamus should not issue because relator waited "as long as 15 months before pursuing a writ of mandamus related to orders that were issued by the trial court dating back to as early as June 22, 2021." In contrast, relator contends:

> [Relator] delayed proceeding earlier to mandamus relief on grounds that it believes are reasonable and not dilatory, and which have in no way impeded defendants' work on the case. The record reflects [relator's] numerous discovery motions, including[] motions for reconsideration and

8

clarification, all intended to call attention to available facts, developments in the criminal case and to brief the applicable caselaw. Other developments have also delayed an earlier filing, including the [COVID-19] pandemic and the court's own lengthy backlog. As noted by the trial court, the court's docket and schedule and counsel's regular practice hours have been stymied and will continue because of the [COVID-19] pandemic. Judge Joe Ramirez succeeded to the court on January 1, 2021. [Relator] renewed some of its earlier motions to give Judge Ramirez an opportunity to revisit matters which former Judge Ysmael Fonseca had denied or deferred action on.

(Footnote omitted).

Although mandamus is not an equitable remedy, its issuance is controlled largely by equitable principles. *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex. 2009) (orig. proceeding) (per curiam). One such principle is that "[e]quity aids the diligent and not those who slumber on their rights." *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding) (quoting *Callahan v. Giles*, 155 S.W.2d 793, 795 (Tex. 1941) (orig. proceeding)). "Thus, a relator who unduly or unreasonably delays filing a petition for mandamus relief may waive its right to such relief unless the delay is justified." *In re Am. Airlines, Inc.*, 634 S.W.3d 38, 43 (Tex. 2021) (orig. proceeding) (per curiam). Even a "significant" delay may be justified depending on the circumstances. *Id.*

To invoke the equitable doctrine of laches, the moving party ordinarily must show an unreasonable delay by the opposing party in asserting its rights and also the moving party's good faith and detrimental change in position because of the opposing party's delay. *In re Laibe*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding) (per curiam); *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989); *see also In re Mabray*, 355 S.W.3d 16, 22 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding [mand. denied]) (explaining that delay alone is insufficient to invoke laches; injury or prejudice must also

9

be established). Whether mandamus is barred by delay is a question of fact that we determine by considering all the circumstances in each case. *In re Mabray*, 355 S.W.3d at 22–23.

We agree with the real parties that a significant amount of time has elapsed since some of the rulings challenged in this original proceeding were issued. If we were only examining the original stay order, signed on October 6, 2020, or the order denying reconsideration of November 20, 2020, we would not consider mandamus relief to be appropriate. And, leaving aside the substantial period of time that has elapsed since these rulings, the respondent in this original proceeding did not issue those orders. *See* TEX. R. APP. P. 7.2(b). "[G]enerally a writ will not issue against one judge for what another did." *In re Blevins*, 480 S.W.3d 542, 543 (Tex. 2013) (orig. proceeding) (per curiam).

However, here we are examining the respondent's subsequent and more recent orders of June 22, 2021, denying relator's motion to compel the production of a schedule of withheld documents, and of August 29, 2022, denying relator's request to partially lift the discovery stay. Examining these orders in conjunction with the applicable law, we note that relator took multiple affirmative steps during this period to pursue relief by consultation with opposing counsel and by motion practice. Relator has offered reasonable explanations for the alleged delay, including the foregoing activities, the COVID-19 pandemic, the trial court's backlog, and challenges caused by an intervening change in the presiding judge of the trial court. *See In re Am. Airlines, Inc.*, 634 S.W.3d at 43. Thus, relator was not inactive in pursuing its rights. Further, it is indisputable that the real parties have not suffered prejudice or loss as a result of any delay. *See In re*

10

*Laibe*, 307 S.W.3d at 318. Finally, we observe that the circumstances present here, in which the trial court's rulings have effectively impaired relator's ability to timely pursue its claims in court, weigh in favor of review by mandamus. *See In re Mabray*, 355 S.W.3d at 22–23 (considering the relevant circumstances in the case). The relator has an interest in the expeditious resolution of its case, and delayed discovery can result in lost evidence and adversely affect relator's ability to present its case. Under these circumstances, we conclude that delay will not prevent us from considering the merits of the June 22, 2021 and August 29, 2022 rulings.

## IV.    FIFTH AMENDMENT

Parties have a constitutional right under the Fifth Amendment to assert a privilege to avoid incriminating themselves in both civil and criminal proceedings. *Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995) (applying U.S. CONST. amend. V). The Fifth Amendment can be asserted in both civil and criminal trials "wherever the answer might tend to subject to criminal responsibility him who gives it." *Id.* (quoting *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924)). "The importance of the freedom from self-incrimination notwithstanding, the role of the Fifth Amendment in civil cases when asserted by a plaintiff presents certain problems not found when the privilege is asserted in a criminal context." *Id.* In a civil case, for instance, a fact finder may "draw negative inferences" from a party's assertion of the Fifth Amendment privilege against self-incrimination. *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007) (per curiam) ("[T]he jury in this civil case was free to draw negative inferences from the [appellees'] repeated invocations of the Fifth Amendment."); *see* TEX. R. EVID. 513(c) (allowing the court or

11

counsel in a civil case to comment on a claim of privilege against self-incrimination and allowing the fact finder to draw an inference from that claim); *see also Univ. of the Incarnate Word v. Redus*, 654 S.W.3d 169, 183 (Tex. App.—San Antonio 2022, no pet.); *Doe v. YUM! Brands, Inc.*, 639 S.W.3d 214, 229 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *Brauss v. Triple M Holding GMBH*, 411 S.W.3d 614, 623 (Tex. App.—Dallas 2013, pet. denied). The rule against penalizing the use of the privilege does not prohibit a trial court from taking acts to ensure that the civil proceeding remains fair. *See Denton*, 897 S.W.2d at 760.

## V.  CONTEMPORANEOUS PROCEEDINGS

A court is not prohibited from proceeding with a civil matter when there is a contemporaneous criminal matter pending. *See In re Gore*, 251 S.W.3d 696, 699 (Tex. App.—San Antonio 2007, orig. proceeding); *McInnis v. State*, 618 S.W.2d 389, 393 (Tex. App.—Beaumont 1981, writ ref'd n.r.e.); *see also In re A3H Foods II LP*, No. 13-20-00361-CV, 2020 WL 6158245, at *1 (Tex. App.—Corpus Christi–Edinburg Oct. 19, 2020, orig. proceeding) (mem. op.). Stated otherwise, "a civil defendant has no right to indefinitely postpone the adjudication of a civil suit because his conduct may have also implicated a criminal statute." *In re Becker*, 554 S.W.3d 780, 784 (Tex. App.—Amarillo 2018, orig. proceeding). Further, parties "are entitled to full, fair discovery within a reasonable period of time, and to have their cases decided on the merits." *Able Supply Co. v. Moye*, 898 S.W.2d 766, 773 (Tex. 1995) (orig. proceeding); *see State v. Lowry*, 802 S.W.2d 669, 671 (Tex. 1991) ("Only in certain narrow circumstances is it appropriate to obstruct the search for truth by denying discovery."); *see also Ford Motor Co. v. Castillo*, 279 S.W.3d

12

656, 663 (Tex. 2009); *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (per curiam); *In re Gore*, 251 S.W.3d at 699.

Thus, the trial court is prohibited from issuing a "blanket" prohibition against discovery in a civil case. *See In re R.R.*, 26 S.W.3d 569, 574 (Tex. App.—Dallas 2000, orig. proceeding); *see also In re Fontaine*, No. 09-17-00423-CV, 2017 WL 6390530, at *1 (Tex. App.—Beaumont Dec. 14, 2017, orig. proceeding) (mem. op.). This is because "it [is] not good public policy to deny civil litigants their entitlement to a fully authorized discovery to assist in preparation of the civil lawsuit merely because criminal matters may be pending against some of the civil litigants." *Tex. Att'y Gen.'s Office v. Adams*, 793 S.W.2d 771, 777 (Tex. App.—Fort Worth 1990), *subsequent mandamus proceeding sub nom. Latham v. Thornton*, 806 S.W.2d 347 (Tex. App.—Fort Worth 1991, no writ). In accordance with this precept, blanket assertions of a Fifth Amendment privilege are not permitted in civil cases. *See In re Edge Capital Grp., Inc.*, 161 S.W.3d 764, 768 (Tex. App.—Beaumont 2005, orig. proceeding); *Gebhardt v. Gallardo*, 891 S.W.2d 327, 330 (Tex. App.—San Antonio 1995, orig. proceeding); *Burton v. West*, 749 S.W.2d 505, 508 (Tex. App.—Houston [1st Dist.] 1988, orig. proceeding); *see also In re Lytle*, No. 12-15-00216-CV, 2015 WL 8959428, at *2 (Tex. App.—Tyler Dec. 16, 2015, orig. proceeding) (mem. op.); *In re Alvarez*, No. 01-07-00569-CV, 2007 WL 3227654, at *1 (Tex. App.—Houston [1st Dist.] Oct. 29, 2007, orig. proceeding) (mem. op.).

However, "the trial court needs to give consideration to the effect of discovery in a civil case on pending criminal proceedings." *In re R.R.*, 26 S.W.3d at 574. Thus, instead of issuing a blanket prohibition against discovery, if a party objects to discovery on

grounds of the Fifth Amendment, the trial court may consider the appropriate action on a question-by-question basis. *See In re Edge Capital Grp., Inc.*, 161 S.W.3d at 767. When the privilege is asserted, it is the trial court's duty to consider the evidence and argument on each individual question to determine whether the privilege against self-incrimination applies. *See id.* at 768; *Burton*, 749 S.W.2d at 508. The trial court should further consider "whether the privilege is being asserted in a bona fide fear of self-incrimination or merely to avoid discovery or to create delay." *Denton*, 897 S.W.2d at 763.

## VI. ANALYSIS

By two issues, relator asserts that the trial court erred by: (1) denying its motion to compel discovery and its motion to compel the production of a privilege log; and (2) staying discovery and refusing to partially lift the stay. The real parties contend that the stay is necessary to preserve the full extent of the Fifth Amendment's protection against self-incrimination and avoid forcing the real parties to choose between that privilege and civil liability. Because it is determinative, we address relator's second issue, regarding the trial court's refusal to partially lift the discovery stay, at the inception of our analysis.

Under well-established Texas law, as discussed above, a blanket prohibition against discovery in a civil case is inappropriate to remedy the potential problems caused by an assertion of the Fifth Amendment right against self-incrimination. *See In re Edge Capital Grp., Inc.*, 161 S.W.3d at 768; *Gebhardt*, 891 S.W.2d at 330; *Burton*, 749 S.W.2d at 508. Under this law, the trial court abused its discretion by refusing to partially lift the discovery stay as requested. However, both relator and the real parties assume, in

14

briefing, that the trial court's actions with regard to the discovery stay are governed by federal law.

The federal law regarding staying discovery in a civil case when a criminal case is pending is not precisely the same as that articulated by Texas state courts. Specifically, federal law allows the trial court to stay discovery in a civil proceeding pending the conclusion of a related criminal proceeding; however, there is a "strong presumption in favor of discovery," and courts should stay a civil case only if the movant seeking the stay shows "special circumstances" and the stay is necessary to prevent the movant from suffering "substantial and irreparable prejudice." *Alcala v. Tex. Webb County*, 625 F.Supp.2d 391, 397–98 (S.D. Tex. 2009) (quoting, in part, *Sec. & Exch. Comm'n v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981)); *see U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F.Supp.2d 758, 761 (W.D. Tex. 2008) ("When a defendant in a civil case is facing criminal charges, a district court may, in its discretion, stay the civil action."); *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983) ("Certainly, a district court may stay a civil proceeding during the pendency of a parallel criminal proceeding."). A party to parallel civil and criminal proceedings is excused from responding to all relevant inquiries on the civil side "[o]nly where the court finds that he could 'legitimately refuse to answer essentially all relevant questions' because of the threat of incrimination." *First Fin.*, 659 F.2d at 668–69 (quoting *United States v. Gomez-Rojas*, 507 F.2d 1213, 1220 (5th Cir. 1975)). The complete stay of a pending civil action until the conclusion of a related criminal proceeding is considered to be an "extraordinary remedy." *In re Piperi*, 137 B.R. 644, 646–47 (Bankr. S.D. Tex. 1991). One reason for this

15

is that a complete stay is similar to a "blanket assertion" of the Fifth Amendment, which is improper under federal law as it is under our state's law. *See Little Al*, 712 F.2d at 134–36. Under federal law, a party is generally required to selectively invoke the privilege against self-incrimination and object with specificity to the information sought, thus allowing the trial court to conduct a particularized analysis with regard to each specific area of discovery. *See First Fin.*, 659 F.2d at 668.

Under federal law, in determining whether a stay is appropriate, the court considers and balances multiple factors, including:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest.

*Alcala*, 625 F.Supp.2d at 398–99 (collecting cases).

In determining whether civil discovery should be allowed to proceed in light of an impending criminal case, the Fifth Circuit Court of Appeals directs trial courts "to employ judicial discretion and procedural flexibility to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *In re Grand Jury Subpoena*, 866 F.3d 231, 234 (5th Cir. 2017) (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) (cleaned up)).

The parties have not cited any Texas cases which have adopted this standard, and they offer no argument regarding its application in conjunction with the foregoing law and the open courts provision of the Texas Constitution. *See Trapnell v. Hunter*, 785 S.W.2d 426, 429 (Tex. App.—Corpus Christi–Edinburg 1990, orig. proceeding)

16

(conditionally granting mandamus relief to correct arbitrary abatement in deference to another forum which also offered no present right to relief).[3] We note that state courts are not bound by decisions of the lower federal courts. *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (per curiam) ("While [state] courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court, in determining the appropriate federal rule of decision, they are *obligated* to follow only higher Texas courts and the United States Supreme Court."); *Johnson v. Nat'l Oilwell Varco, LP*, 574 S.W.3d 1, 10 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("We may consider Fifth Circuit opinions as persuasive authority but are only bound to follow precedent on federal matters from the United States and Texas supreme courts."); *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 803 (Tex. App.—Dallas 2008, pet. denied) ("On issues of federal law, . . . we must follow the decisions of the United States Supreme Court and the Texas Supreme Court; the decisions of other federal courts, by contrast, may be persuasive but are not binding on us."); *see also Fisher v. BNSF Ry. Co.*, 650 S.W.3d 880, 884 (Tex. App.—Fort Worth 2022, no pet.).

Even assuming, without deciding, that the federal balancing test applies to this case, thus potentially allowing the trial court to continue the blanket stay of all discovery in the case, we conclude that the record before the Court fails to indicate that the trial

---

[3] The Texas Constitution provides in part that, "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. This "open courts" provision contains three separate constitutional guarantees: (1) "courts must actually be open and operating"; (2) the legislature cannot impede access to the courts through "unreasonable financial barriers"; and (3) "meaningful legal remedies must be afforded . . . so that the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 448 (Tex. 1993).

court exercised its discretion in applying such a test to determine if the stay should be partially lifted. *See Alcala*, 625 F.Supp.2d at 397–98. In fact, there is little to no evidence in the record with which the trial court could have applied the test. Further, nothing in the record indicates that the trial court reviewed the relevant discovery and considered the application of the privilege on a question-by-question basis. *See In re Edge Capital Grp., Inc.*, 161 S.W.3d at 767. Accordingly, even if we were to apply federal law as suggested by the parties, the trial court abused its discretion in maintaining a blanket stay of discovery. *See First Fin.*, 659 F.2d at 668. And further, relator lacks an adequate remedy by appeal to correct this abuse of discretion. *In re R.R.*, 26 S.W.3d at 574.

We sustain relator's issues concerning the trial court's orders of June 22, 2021, and August 29, 2022, on grounds that the trial court erred by continuing to implement a "blanket" prohibition against discovery.

### VII.    CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response filed by the real parties in interest, and relator's reply, is of the opinion that relator has met its burden to obtain mandamus relief. We conditionally grant the petition for writ of mandamus and direct the trial court to vacate its orders of June 22, 2021, denying relator's motion to compel the production of a schedule of withheld documents, and of August 29, 2022, denying relator's request to partially lift the discovery stay.

In so ruling, we note that relator requests us to direct the trial court "to vacate the stay of discovery as to all defendants except [Quintanilla]; alternatively, partially lift the stay, except as to [Quintanilla], to allow [relator] to proceed with discovery; and still

18

alternatively, partially lift the stay as to [Nolana] and direct the trial court to compel [Nolana] to produce a privilege log." We decline to direct the trial court specifically how to rule on each of these matters. Instead, we direct the trial court to exercise its discretion in accordance with the applicable precedent as described in this memorandum opinion. Under this procedure: (1) the party to whom discovery has been propounded should determine whether or not to raise a Fifth Amendment privilege as to each request for production or other discovery request; (2) if the party determines that privilege should be asserted, the party should make a selective and particular assertion of the privilege as to that inquiry, rather than a "blanket" objection, and the party should make a showing regarding the harm it will suffer without a stay of that discovery request, and explain why other methods of protecting its interests, such as protective orders or sealing orders, are insufficient; and (3) the trial court should consider the evidence and argument on each inquiry and determine whether the privilege applies on a question-by-question basis. *See, e.g.*, *Denton*, 897 S.W.2d at 763; *In re Edge Capital Grp., Inc.*, 161 S.W.3d at 768; *Burton*, 749 S.W.2d at 508. We note, in this regard, that "artificial entities," such as Nolana, are not protected by the Fifth Amendment. *See In re Russo*, 550 S.W.3d 782, 788 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding) (citing *Braswell v. United States*, 487 U.S. 99, 102 (1988)). The parties and the trial court should parse the distinction between Nolana's assertion of the privilege and Wadhwani's. *See id.* at 788–89 (discussing the application of the "collective entity" rule regarding the production of corporate documents). Ultimately, the trial court should utilize its discretion and the procedural tools at its disposal to balance the public and private interests in the prompt resolution of the civil proceeding

19

with the needs and requirements of a party asserting the Fifth Amendment privilege against self-incrimination. *See Gonzalez*, 571 F.Supp.2d at 763; *Alcala*, 625 F.Supp.2d at 407. If, after utilizing the foregoing procedure, the trial court is of the opinion that this matter presents "special circumstances" and the stay is necessary to prevent "substantial and irreparable prejudice," the trial court should so clarify and ensure that its conclusion is supported by both state and federal law. *See, e.g.*, *Alcala*, 625 F.Supp.2d at 397–98.

In conclusion, we conditionally grant the petition for writ of mandamus as described herein. The writ will issue only if the trial court fails to promptly comply.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
13th day of January, 2023.